## Sowards v. Sowards et al.

(Decided June 13, 1933.)

WILLIS STATON and K. D. KEESEE for appellant.

STRATTON & STEPHENSON and W. K. STEELE for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On January 20, 1920, Garfield Sowards bought a home in Pikeville for $3,000, which he borrowed from his aunt, Mrs. Kentucky Musick, and secured the note by a mortgage on the property. In the year 1922, the city of Pikeville assessed the property for a street improvement tax, and the contractor brought suit to enforce his lien, and made Mrs. Musick a party defendant. Mrs. Musick filed a cross-petition to enforce her mortgage. Judgment was rendered ordering the master commissioner to sell the property to satisfy the liens. Afterward Mrs. Musick satisfied the lien in favor of the contractor.

On January 27, 1927, Mrs. Musick married A. J. Maynard, and died intestate in the month of December, 1927. R. H. Sowards was appointed and qualified as her administrator. The claim against Garfield Sowards was listed and appraised at $4,660. A few months later the judgment against Garfield Sowards was revived in the name of the administrator, and the master commissioner was proceeding to have the property sold to satisfy and enforce the judgment lien.

On February 6, 1929, Garfield Sowards brought suit against the administrator and the master commissioner to enjoin the sale of the property on the ground that the money or the property was a gift to him. Later on A. J. Maynard filed his petition asking to be made a party, and denying the allegations of the original petition. He also demurred to the original petition. An amended petition was then filed pleading in substance that Mrs. Maynard requested her husband, A. J. Maynard, to deliver to plaintiff the notes which he had executed, stating that she was giving said amount to plaintiff, and that A. J. Maynard procured said notes and delivered them to plaintiff after the death of Mrs. Maynard, and also that Mrs. Maynard requested her husband to satisfy the judgment and that he promised her he would do so, and

that by reason of these things he was estopped from recovering any part of the judgment. About the same time the administrator filed a demurrer to the original petition, and also a separate answer denying the allegations of the petition. Later on A. J. Maynard filed an answer to the amended petition. The administrator's demurrer to the petition as amended was sustained. Thereafter another amended petition was filed reiterating the allegation that Mrs. Maynard requested her husband to procure and deliver the notes to plaintiff, and requested and authorized him to mark the judgment satisfied. By another paragraph plaintiff relied on a written contract of sale, which had been lost, transferring the property to plaintiff. The court required the plaintiff to elect which cause of action he would prosecute, and plaintiff elected to proceed on the lost writing. Later the alleged writing was found. Maynard and the administrator filed answers denying the allegations of the amended petition, and pleading non est factum as to the writing. The writing relied on is as follows:

"O. A. Stump
"Attorney at Law
"Pikeville, Ky.

"Dec. 14th, 1926.

"This agreement of sale is to show that I, Kentucky Musick, have this day sold to Garfield Sowards one house and lot on Cline Street in the City of Pikeville, Kentucky, and known as the M. M. Edmonds property on which Garfield Sowards now lives and is bounded on Front by Cline Street and on North by property of John A. McCown, and by Big Sandy River on the East and South by the Fuller or R. H. Sowards property.

"For which and in full payment of same the said Garfield Sowards has this day paid to me the sum of One Dollar in hand and the love and affections that I have for my nephew and other good and valuable considerations not herein mentioned, all of which is paid in hand, and the receipts of which is hereby acknowledged.

"Deed for same was made from M. M. Edmonds to the said Garfield Sowards.

"It is agreed that the grantor herein, Kentucky Musick is to pay the Kelly Brothers judgment.

"Kentucky Musick.

"Witness: R. H. Sowards."

After issue had been joined, and evidence taken, the chancellor denied the relief prayed for, and Sowards appeals.

While other questions are raised, it is only necessary to determine the legal effect of the writing, and the question of forgery.

For appellees it is insisted that the writing is not an assignment of the judgment, but a mere title bond selling real estate, and since Mrs. Musick had no title to the property but only a judgment lien thereon, the writing was not sufficient to support appellant's cause of action. It is true that the title to the property was in appellant, and that Mrs. Musick had only a judgment lien thereon, but as the writing recites, "I have this day sold to Garfield Sowards one house and lot on Cline Street," etc., and as the greater includes the less it cannot be doubted that the writing covered whatever interest Mrs. Musick had in the property and was therefore sufficient to transfer the judgment lien.

On the question of forgery the evidence for appellees is as follows: Mrs. Will Scott testified that on one occasion, after appellant left, Mrs. Musick told her that Garfield was wanting her to give him the home he lived in, but that she was not going to give it to him as she had already given him enough. Will Scott, her husband, testified that Mrs. Musick told him that Garfield wanted her to give him the home, and it looked to her like she had given him enough, and did not aim to give him any more. Fanny Tackett also testified that she heard Mrs. Musick say that Garfield wanted her to give him the home, but she was not going to do it. This occurred just a few days before Mrs. Musick married Mr. Maynard. Mrs. Francis Sowards testified that she was present once when Garfield came in and told his aunt, Mrs. Musick, that he wanted a mortgage, and gave her so long to get it. Mrs. Musick said, "No, Garfield, I will never give it to you." Walter Hatcher, who had been connected with the First National Bank of Pike-

ville, as bookkeeper, assistant cashier, and vice president, for many years, testified that Mrs. Musick kept her deposits in the bank, was one of the large stockholders, and wrote her own checks, and that he was acquainted with her handwriting. When shown the writing in question, and asked if the signature was in the handwriting of Kentucky Musick, he answered, "It doesn't look like the way she writes it." John M. Yost, cashier of the First National Bank of Pikeville since 1925, and who had seen Mrs. Musick sign her name many times, was asked if, in his judgment, the signature on the writing was the genuine signature of Kentucky Musick, and answered, "Well, it doesn't look like her signature to me." He also stated that there appeared to be quite a good deal of difference between the signature on the writing and the signatures on other checks admitted to be genuine. I. E. Brooks, assistant cashier of the same bank, testified that he had examined numerous checks and papers signed by Mrs. Musick, and in his judgment they would not have paid a check on the signature in question. On being asked if a check had been presented bearing the same signature and witnessed by R. H. Sowards he would have paid it, he answered, "Well, I don't know whether I would or not." Prof. T. J. Kendrick, a professor in Pikeville College, compared the signature in question with genuine signatures of Mrs. Musick on numerous checks, and stated that there was a marked dissimilarity between the signature on the writing and the signature on the checks. Prof. John F. Siple, a professional penman and handwriting expert, compared the signature in question with signatures of Mrs. Musick on other checks admitted to be genuine, and pointed out numerous differences, and gave it as his opinion that the signature in question was not in the handwriting of Mrs. Musick.

On the other hand, Garfield Sowards testified that his aunt signed the writing in his presence, and in the presence of R. H. Sowards, and delivered it to him during her lifetime. R. H. Sowards, administrator, deposed that he was present and saw Mrs. Musick sign the writing and deliver it to Garfield. He had been attending to Mrs. Musick's business, and she had been telling him all along what she was going to give Garfield and he asked her to do it. She was talking about marrying again, said she would fix it up for him,

and she did. She had also said that she did not want
it put to record as she did not want any one else to
know it, as they might want her to give them some-
thing. When the question came up in court, and Gar-
field was talking about it, he told Garfield that he ought
to draw his writing on them, and Garfield was surprised
in a way. He then went with Garfield and found the
writing among some old papers in a dresser drawer. O.
A. Stump, commonwealth's attorney, testified that he
was at Mrs. Musick's house with Garfield, and she want-
ed to make some arrangements so Garfield could hold
the property. He prepared the writing and gave it to
Garfield. A few days later he asked her if he had writ-
ten it to her notion, and she said, "Yes." She also
said that she signed it and gave it to Garfield. She
asked him to say nothing about it because her other
folks were always wanting her to give them something,
and she could not afford to do it. Hi Pauley, county
judge of Pike county, although admitting that he was
not an expert in handwriting, compared the signature
on the writing in question with signatures on checks ad-
mitted to be genuine, and stated that although there
were some differences, it looked to him that they were
in the same handwriting. Frank P. Damron, United
States commissioner, testified that he was acquainted
with Mrs. Musick, and was attorney for A. J. Maynard
in the settlement of her estate, and saw what purported
to be her signature on several papers in that case. In
his opinion the signature on the writing in question was
substantially the same as the signatures on the other
checks admitted to be genuine. W. W. Barrett, master
commissioner of the Pike circuit court, and a graduate
of the Ransomerian School of Penmanship of Kansas
City, Mo., testified that there was as much dissimilarity
in the signatures on the genuine checks as there was be-
tween the checks and the writing in question. He also
testified that Mrs. Musick's name appeared to have been
signed with a steel pen, while R. H. Soward's name was
signed with a fountain pen. Sidney Trivett, a county
attorney, testified that he was formerly a bookkeeper
in the First National Bank, and was familiar with Mrs.
Musick's handwriting to some extent. After comparing
the signature on the writing with the signature on the
genuine checks, he gave it as his best judgment that the
handwriting was the same. In addition to this evi-
dence, we have before us photostatic copies of the sig-

nature in question, and of several genuine signatures of Mrs. Musick.

While the testimony of experts, as well as the testimony of those familiar with a person's handwriting, is always admissible, and entitled to some weight, the court, where the evidence is available, may compare the signature in question with genuine signatures and test the opinion evidence of others. It is true that the questioned signature contains the letter ''M'' instead of ''N''; but there is evidence that the same thing occurred on other checks, and it is hardly probable that one who intended to forge the name of another would deliberately misspell it. Taking up the various signatures before us, it can hardly be said that there is any greater difference between the questioned signature and the genuine signatures than there is between any one of the genuine signatures and the others. Perhaps there is a little more shading on the disputed signature than on the others, but viewing the signature as a whole it does not vary from the others further than would naturally be expected if written at a different time, and with a different pen. Not only so, but we have positive evidence that Mrs. Musick intended to fix the matter for Garfield before she married; that she approached Mr. Stump and requested him to prepare a writing for that purpose; that he prepared the writing, and a few days later Mrs. Musick told him that she had signed the writing, and had delivered it to Garfield. Furthermore, we have the positive evidence of Garfield, whose competency as a witness was not challenged, that his aunt signed the writing in his presence, and in the presence of R. H. Sowards, and delivered the writing to him, supported by the testimony of R. H. Sowards that he was present, and saw Mrs. Musick sign and deliver the writing to Garfield, and that he signed the writing as a witness. In our opinion, the positive evidence of disinterested witnesses, fortified by appellant's evidence, that Mrs. Musick actually signed the writing in question, and stated that she had signed it, is more persuasive than the opinion evidence of the other witnesses, even if we should regard their views as supported by the exhibits. In the circumstances we are constrained to hold that the charge of forgery was not sustained by the evidence. In reaching this conclusion we are not unmindful of the fact that R. H. Sowards, administrator, who

testified that Mrs. Maynard signed the writing in his presence, filed an answer pleading non est factum. It is apparent from the record that he was reluctant to make the attack, but in view of the insistence of others felt that his duty to the estate required him to do so.

Judgment reversed, and cause remanded, with directions to grant appellant the relief prayed.